**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0417n.06

No. 16-1980

**FILED**
Jul 18, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DONALD and HARRIET VAN LOO, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CAJUN OPERATING COMPANY d/b/a | ) | DISTRICT OF MICHIGAN |
| CHURCH'S CHICKEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS, BATCHELDER, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** This Employee Retirement Income Security Act of 1974 (ERISA) action arises from the denial of a claim under Cajun Operating Company d/b/a Church's Chicken's (Church's) employer-sponsored life-insurance plan in which Donna Van Loo (Van Loo), an in-house attorney for Church's, participated. Van Loo elected and paid for life-insurance coverage offered through her employment, from 2007 until her death in 2013. Church's, however, failed to obtain a required medical-underwriting form from Van Loo, resulting in its insurance provider's denying benefits to plaintiffs, Van Loo's parents, that exceeded a minimum guaranteed-coverage amount. Plaintiffs sued, claiming that Church's violated its duties as an ERISA fiduciary in making material misrepresentations regarding Van Loo's coverage level, which she relied on to her detriment. On the parties' cross-motions for summary judgment, the district court granted summary judgment to plaintiffs, awarding $314,000 for benefits that exceeded the insurer's guaranteed coverage. On appeal, Church's

does not dispute its status as an ERISA fiduciary or that it made material misrepresentations; it disputes only that plaintiffs proved detrimental reliance. Because plaintiffs met their burden as to detrimental reliance, and because Church's failed to rebut plaintiffs' showing, we **AFFIRM**.

**I**

Van Loo joined Church's as an in-house real-estate attorney in 2007. She was diagnosed with esophageal cancer in late December 2012, went on disability leave, and passed away on March 4, 2013.[1] Van Loo's starting annual salary was $100,000 and, after a promotion and annual merit raises, her annual salary at the time of her death was $122,200.

As an employee benefit, Church's provided basic life insurance at 1x annual salary, and offered employee-paid elective supplemental life insurance. Both coverages were provided by Reliance Standard Life Insurance Company (Reliance) under a group life-insurance policy. The schedule of benefits in Church's policy[2] offered the following coverage levels:

> Basic Life . . .
> One (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000. . . .
>
> Supplemental Life . . .
> Choice of: One (1), Two (2), Three (3), Four (4) or Five (5) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $750,000 . . . .
>
> Amounts of insurance over $300,000 are subject to [Reliance's] approval of a person's proof of good health . . . . During an [open-enrollment] period, applications for employees . . . who were previously eligible and are now applying for initial or additional coverage will not require proof of good health for a one level increase in coverage, provided: (1) the application is complete, signed, and received by [Church's] during the [open-enrollment period], and (2) the applicant was not previously declined for insurance coverage by us, postponed, had their application withdrawn, or voluntarily terminated their insurance with us . . . . Employees who exceed the combined Basic and

---

[1] During her life, Van Loo suffered from a number of medical conditions. She went into remission from Hodgkin's lymphoma in the 1980s. She acquired Hepatitis C from a 1980s blood transfusion; while being treated for the esophageal cancer that ultimately took her life, she reported that she participated in clinical trials in 2008 that left her Hepatitis C undetectable and effectively cured. Van Loo suffered from heart-valve disease and heart murmur, and for about six weeks in 2008 was on leave from Church's due to her heart condition, which necessitated a valve replacement; Church's was aware of that condition. In addition, Van Loo suffered from asthma, hypothyroidism, and obesity.

[2] There is no evidence that Van Loo received a copy of or had access to Church's policy with Reliance, although Church's suggests that as a "corporate attorney" she could have accessed it.

> Supplemental Life Insurance guarantee issue amount of $300,000 [and] employees . . . who exceed a one level increase in insurance are subject to our approval of proof of good health and such amounts of insurance will not be effective until approved by us.

R. 78-3, PID 2022–23.

Church's self-administered its group life-insurance plan, meaning that it was "responsible for ensuring that coverage elections (including any required proof of good health) are processed in accordance with the terms and conditions of the applicable policy and that premium remittances are accurate and timely." R. 78-4, PID 2045. Church's calculated premiums and deducted them from payroll, and, absent a need for medical underwriting on coverage over $300,000 or on coverage increased by more than one level, did not provide Reliance with the names or ages of insured employees.

When she was hired in 2007, Van Loo elected 2x supplemental insurance. This meant that she was covered for a total of $300,000 (1x her $100,000 annual salary in basic life, plus 2x that salary in supplemental life). The enrollment form Van Loo completed did not include a requirement to prove insurability or state whether such proof would be required in the future.

Later in 2007, during open enrollment, Van Loo increased her supplemental-coverage election to 3x her annual salary, effective for the 2008 benefits year. The supplemental-insurance section of the enrollment form stated: "If you wish to increase your supplemental life coverage, you may be required to submit an evidence of insurability form. If so, one will be mailed to you." R. 78-7, PID 2057. Van Loo's coverage election put her over the $300,000 "guarantee issue" threshold after which proof of good health is required for coverage. The record does not show that Church's provided an evidence-of-insurability form (EIF) to Van Loo at that time, nor does Church's claim that it did.

During 2010 open enrollment, Van Loo again increased her election, this time to 4x her annual salary. In 2011, she received a 2012 employee-benefits guide. In the section related to life insurance, the guide stated:

> When is Evidence of Insurability Required?
> Supplemental Life Insurance - If you want to increase your coverage during open enrollment, you may increase by one level (such as from 1x salary to 2x salary). Increases of more than this, or more than $150,000, may require an [EIF].

R. 78-14, PID 2084.

In 2012, Van Loo received a guide for 2013 with identical language. The record does not contain a benefits guide or similar document that was provided to Van Loo prior to 2011.[3]

Several months before her cancer diagnosis, Van Loo completed her 2013 benefits election. She again elected supplemental insurance at 4x her annual salary, at a $97.31 monthly premium. Church's manages its open-enrollment process over its corporate intranet; after Van Loo completed the process, a confirmation screen displayed the message "CONGRATULATIONS on completing your benefits enrollment for 2013." R. 78-9, PID 2061. This screen also cautioned that "[the information you submitted] is open to investigation and verification, and is subject to the eligibility provisions of the plans." *Id.* By this point, Van Loo's total coverage was $615,000 (5x her $122,200 annual salary, rounded to the next-higher $1,000 per the group-life policy).[4]

---

[3] Van Loo did not receive a copy of Church's policy with Reliance, which described the required medical underwriting for coverage over $300,000. Church's points to the quoted language from the benefits guides, which Van Loo *did* receive, as notice that her coverage was subject to underwriting. On its face, this language did not apply to Van Loo. She last increased her election in 2010 for the 2011 benefits year, and renewed at the same salary multiple for the 2012 and 2013 benefit years. The quoted language instead applied to employees who elected a higher salary multiple during open enrollment—increases of *more than* one level, or more than $150,000—and said that such increases *may* require an underwriting form. Although the monetary value of Van Loo's coverage increased in both the 2012 and 2013 benefit years due to salary increases, in neither of those years did that increase approach $150,000.

[4] Plaintiffs calculated the coverage at $614,000 and the district court's $314,000 award was based on that amount.

After Van Loo took disability leave in early 2013, she no longer received a paycheck and thus her insurance premiums were not deducted from payroll. On February 21, 2013, Church's sent her a letter requesting that she pay the company directly for her benefits, listing her supplemental life insurance as one of those benefits. On March 1, three days before Van Loo's death, Church's sent Van Loo another letter confirming it had received her benefits payment.

Van Loo consistently paid premiums for her supplemental life insurance from her hiring until she died, either through payroll deduction or directly to Church's. Despite this, neither Church's nor Reliance ever obtained an EIF from her, which the insurance policy required for coverage over $300,000. After her death, Church's conducted an audit of Van Loo's personnel file, which yielded no evidence that it had provided her with an EIF or otherwise sought one from her. It argues, though, that Reliance itself sought the EIF. On November 30, 2010, Church's benefits manager Chandra Matthews had emailed a contact at Reliance regarding EIFs:

> I am really buried with open enrollment data and payroll year-end work, but I am trying to review elections for [EIF]. Can you please confirm the following:
>> [EIF] is needed for
>> • New hires who elect an amt of supp life that is over $300k
>> • Open enrollment changes who elect more than a 1-level increase in either supp or spouse life OR
>>> • Open enrollment changes who elect more than $300k in supp life coverage
>
> Also, can you provide me with your most recent [EIF]? If we provided you with a list of the employees who need [EIF] and their addresses, could you send?

R. 78-16, PID 2113.

A Reliance representative replied confirming the underwriting threshold listed in the email, adding that "[w]e do not typically send out [EIFs], but how many forms do you think will be needed? We might be able to do this as an exception this time." *Id.* Church's produced two documents to support its allegation that Van Loo was one of the employees to whom Reliance sent an EIF: (1) an unsigned form letter that was not addressed to Van Loo and (2) a 2010 email containing a spreadsheet with Van Loo's name, address, and an "X" marked next to her name.

According to Reliance, the "X" indicated that its account manager Taree Murphy sent a form to Van Loo.[5]

After Van Loo's passing, her parents, as beneficiaries, submitted a proof-of-loss form to Reliance. Stating that it sent an EIF to Van Loo and did not receive a completed form back, Reliance paid $300,000, the guaranteed amount, rather than the $614,000 that plaintiffs requested.

## II

Plaintiffs filed a five-count complaint against Reliance and Church's, seeking the remaining $314,000 in benefits that Reliance denied. After the district court resolved defendants' dispositive motions, including Reliance's motion for judgment on the administrative record regarding plaintiffs' recovery-of-benefits claim against it, only one count remained: that Church's breached its ERISA fiduciary duty to administer the group life-insurance policy in the sole interest of the insured employees and their beneficiaries. *See* 29 U.S.C. § 1132(a)(3).

Plaintiffs moved for summary judgment, asserting there was no genuine issue of material fact regarding the elements required to prove their fiduciary-duty claim: (1) that Church's was an ERISA fiduciary, (2) that it made material misrepresentations to Van Loo with respect to her life-insurance benefits (i.e., that she had a certain level of coverage), and (3) that Van Loo relied on these misrepresentations to her detriment.

Church's produced two pieces of evidence showing that had Van Loo submitted a truthful EIF, she would not have been approved for more insurance than the $300,000 guarantee issue. First, it submitted a declaration by Reliance's medical-underwriting manager, Margaret Simon, stating that Simon was familiar with the Reliance underwriting standards applicable

---

[5] In actuality, Van Loo's election in 2010 did not require an EIF because she did not increase her coverage by more than one level, or by more than $150,000, over the prior benefit year's election.

during the relevant 2007 to 2013 period, and that Van Loo would have been rejected for coverage over $300,000 based on those standards because she had Hepatitis C for more than four to six months.[6] Simon did not identify any other basis in Van Loo's medical history that would have led to her rejection for coverage by Reliance. Church's also submitted an undated fourteen-page excerpt of Reliance's underwriting standards, which provide, consistent with Simon's declaration, that hepatitis lasting over four to six months is an unfavorable risk factor for which coverage is to be declined. Neither Church's nor plaintiffs submitted evidence regarding whether Van Loo would have been able to obtain similar coverage from other insurers (e.g., an affidavit from an insurance agent or underwriter familiar with underwriting standards across the industry).

Church's did not dispute being an ERISA fiduciary and does not now dispute that it made material misrepresentations. It did (and still does) dispute that Van Loo relied to her detriment on its misrepresentations. In its view, plaintiffs cannot show that Van Loo detrimentally relied on any misrepresentations about her coverage because her medical history rendered her uninsurable. Church's argued that had Van Loo submitted a truthful EIF, Reliance would have declined additional coverage; and given her Hepatitis C history, she would have been declined coverage by any life insurer. Church's asserted that these points prevent a showing of detrimental reliance and that it is plaintiffs' burden to prove otherwise. Further, Church's argued that as "an experienced corporate attorney," Van Loo would have been familiar with the

---

[6] The plaintiffs argue that Simon's declaration should be struck as unsworn, as inadmissible hearsay, as irrelevant, and as untimely filed after discovery. The district court referred to Simon's declaration in its order granting summary judgment and considered the declaration in its analysis. Plaintiffs did not move to strike Simon's declaration. *See* Fed. R. Evid. 103(a) (motion to strike evidence must be timely). Because plaintiffs failed to move to strike, we review the declaration's inclusion in the record for plain error. Given that plaintiffs prevailed in the district court and prevail on appeal, the inclusion was not plain error. *See id.* 103(e) (plain error must affect substantial rights).

requirement to submit an EIF to obtain life insurance, undermining plaintiffs' claim that she reasonably relied on Church's misrepresentations.  Church's Supp. Br., R. 99, PID 2677 n.6.

After a hearing on the motion, the district court issued an opinion finding no genuine issue of material fact regarding any of the three elements of an ERISA fiduciary-breach claim, granted summary judgment to plaintiffs, and awarded them $314,000.  Its opinion concluded with an apt summation of the case:

> Based on the undisputed evidence, Church's failed to provide Donna Van Loo an EIF in 2008, the year she was entitled to fill one out in order to qualify for supplemental life insurance coverage past the guaranteed-issue threshold.  Despite this failure, Church's continued to make material misrepresentations to Van Loo, leading to a reasonable belief that coverage was effective.  Van Loo paid her premiums, even submitting them directly to Church's when she went out on disability leave.  But that coverage, which Plaintiffs expected when they filed their claim after the death of their daughter, never became effective—because Church's failed to provide an EIF in 2008, when Van Loo's health should have been evaluated.

*Van Loo v. Cajun Operating Co.*, 190 F. Supp. 3d 704, 719 (E.D. Mich. 2016).  This appeal followed.

## III

### A

We review the grant of summary judgment de novo.  *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017).  Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citation omitted).  A fact is material if it establishes or refutes an element of a claim. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  We view material facts, and make inferences from them, in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the initial burden and the

ultimate burden of persuasion. *Id.* at 586–87. If the movant satisfies its initial burden, the burden shifts to the nonmovant to show the existence of a "genuine issue" of material fact. *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited [by the movant] do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In opposing a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat the motion]; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"[An ERISA] fiduciary shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1). ERISA does not provide a standard for establishing harm from breaches by ERISA fiduciaries. *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011). The Supreme Court has recognized, however, that harm includes detrimental reliance and the loss of a right protected by ERISA. *Id.* at 444. And we have held that to prevail on their fiduciary-breach claim, plaintiffs must show "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the [employee] relied on those misrepresentations to [her] detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). The employee's reliance on misrepresentations also must have been "reasonable." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006) (citation omitted).

Fiduciaries are liable when their misrepresentations cause an employee to be inadequately informed in her decision whether to pursue benefits. *See Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999). To show detrimental reliance, "[t]he prejudice, or detriment, suffered must be actual and substantial, but may be proved by loss of opportunity to improve one's position." *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 276 (6th Cir. 2016) (citation and internal quotation marks omitted).

**B**

Van Loo is not alive to testify that she believed that she already had her desired level of life-insurance coverage through Church's and that she therefore did not seek coverage elsewhere. But, as the district court noted, one who believes she has coverage does not go out to acquire the same coverage again. *Van Loo*, 190 F. Supp. 3d. at 718. Under these circumstances, absent any evidence to the contrary, a reasonable trier of fact could only find that Van Loo wanted a certain level of coverage, as shown by her annual elections and payment of monthly premiums, including directly to Church's while she was on disability leave. Because Church's misrepresented her coverage level, Van Loo lost the opportunity to obtain the coverage she wanted through another channel, such as on the individual market for life insurance.

Church's rebuts this point by raising Van Loo's medical history, arguing that she did not lose an opportunity to obtain alternative coverage because she was in fact uninsurable during the entire term of her employment. This argument focuses the inquiry: what were the parties' relative burdens regarding detrimental reliance at the summary-judgment stage? This question has two parts. First, what was plaintiffs' initial burden to establish detrimental reliance? Second, assuming plaintiffs met that burden, what was Church's rebuttal burden to show that detrimental reliance remained a genuine issue of fact? The district court followed the reasoning

of *Rainey v. Sun Life Assur. Co. of Canada*, No. 3-13-0612, 2014 WL 4979335 (M.D. Tenn. Oct. 6, 2014), in finding detrimental reliance on Van Loo's part. We begin our analysis there, as well.

In *Rainey*, an employer misled an employee into believing that she had life-insurance coverage; the employee paid premiums for the coverage, but was ineligible for the benefit as a part-time employee, and thus the coverage was ineffective under the policy. *Rainey*, 2014 WL 4979335, at *2 (adopting magistrate judge's report and recommendation, 2014 WL 4053389 (Aug. 15, 2014)). When Rainey's beneficiary sought the insurance benefits after Rainey was murdered, the court did not require direct evidence of detrimental reliance (such as affirmative statements made to family), and instead relied on the inference that Rainey's electing and paying for coverage evidenced that she wanted the coverage. *Id.* Here, the district court analogized Rainey's detrimental reliance to Van Loo's, noting that both Rainey and Van Loo "reasonably relied to [their] detriment upon the misrepresentations of [a plan fiduciary] by paying premiums and by foregoing alternative coverage . . . ." *Van Loo*, 190 F. Supp. 3d at 718 (quoting *Rainey*, 2014 WL 4979335, at *2). Church's asserts, however, that *Rainey* is inapposite because its facts do not suggest that the employee's medical history would have prevented her from obtaining alternative coverage. Health status, Church's argues, distinguishes Rainey and Van Loo, because Van Loo's medical history would have rendered her uninsurable.

In drawing the distinction between Rainey's health and Van Loo's, Church's undermines its argument that plaintiffs, as part of their initial burden on summary judgment, must show evidence that their daughter was insurable. Church's does not argue that Rainey's beneficiary was required to establish Rainey's insurability as part of his initial burden, nor does it urge us to disregard *Rainey* as wrongly decided. Instead, Church's implicitly concedes that if Van Loo's medical history were not at issue, plaintiffs would not need to make an affirmative showing of

her insurability. A decedent's history of electing and paying for coverage, then, is sufficient to show detrimental reliance.

It is Church's, not plaintiffs, who raised Van Loo's health as an issue. Church's asserts that Van Loo was not harmed by its misrepresentations because her history rendered her uninsurable. In raising Van Loo's health status, Church's seeks to rebut plaintiffs' showing of detrimental reliance. *Cf. Celotex Corp.*, 477 U.S. at 330 (after movant shows no genuine issue, burden shifts to nonmovant). We accept that Van Loo had a history of serious medical conditions and that pre-existing conditions may cause a life insurer to decline coverage to someone who seeks it, or to charge an unaffordable premium. We also accept that there might be some medical histories that would cause all insurers to reject an applicant. Church's argues that Van Loo fell into this category. Had Church's supported its assertion of general uninsurability with evidence, this could indeed have constituted an adequate rebuttal to plaintiffs' motion for summary judgment. But Church's presented only evidence that Reliance would not have issued additional insurance; Church's assertion that Van Loo's medical history rendered her *generally* uninsurable in 2008 and thereafter is unsupported by any evidence, such as an affidavit from a life-insurance expert or an agent or underwriter familiar with market-wide underwriting standards for life insurance.

Here, Van Loo elected coverage, paid premiums, and forewent the opportunity to seek coverage elsewhere believing that if she died, her beneficiaries would receive a certain level of coverage through Church's plan. This is a sufficient prima facie showing of detrimental reliance, even without an affirmative showing that had Church's never misrepresented Van Loo's coverage, she would have obtained additional insurance elsewhere. Church's argues a counterfactual—market-wide uninsurability—to rebut Van Loo's detrimental reliance, but it

must point to more than speculation to show that there is a genuine issue of fact regarding reliance. *See Anderson*, 477 U.S. at 252.

C

Church's argues that, even if Van Loo relied on its misrepresentations, her reliance was not reasonable.

First, it argues that in 2010 Van Loo was on notice that an EIF was required once she received the form from Reliance. However, as the district court explained, even accepting that Van Loo received an EIF from Reliance in 2010, she was entitled to apply for coverage based on her health at the time she crossed the $300,000 guaranteed-issue threshold, which was in 2008. *Van Loo*, 190 F. Supp. 3d at 719. Van Loo's elections subsequent to going over the $300,000 threshold in 2008 were not subject to additional or ongoing medical underwriting (*see* note 3 and accompanying text). Assuming that Reliance would not have approved Van Loo for coverage in excess of the guarantee issue had she truthfully completed an EIF in 2008, she would have then had an opportunity to seek alternative coverage or take other steps to provide for her parents.

Second, Church's argues that, based on her education and experience as a corporate attorney, Van Loo should have known that an EIF would be required, or should have known that she could obtain the policy to read the medical-underwriting requirement for herself. In support of this argument, Church's cites *Moore*, 458 F.3d at 434, in which we found an employee's reliance on his employer's misrepresentation regarding disability benefits to be unreasonable because he was himself the employer's benefits expert. That is hardly the case here. Van Loo was a real-estate attorney; the record contains no evidence that her employment exposed her to Church's group life-insurance policy or employee-benefits issues. There is no reason to presume that a real-estate lawyer has any greater knowledge about benefits plans than a non-lawyer.

Church's also argues that Van Loo had constructive notice of Reliance's medical-underwriting requirement because she could have requested a copy of the policy. *See Brown v. Owens Corning Inv. Rev. Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (actual knowledge when a plan document is accessible). This argument too is speculative; Church's does not present evidence that Van Loo actually had access to the Reliance policy (e.g., testimony or exhibits showing that the policy was available on the corporate intranet, or that she handled the policy in connection with her employment).

## IV

The Secretary of Labor, as amicus curiae, has encouraged us to decide this appeal on the basis that the harm required to establish an ERISA fiduciary-breach claim is less stringent than that traditionally required to demonstrate detrimental reliance. *See Amara*, 563 U.S. at 444. Because we find that plaintiffs have shown detrimental reliance, and that defendant has failed to rebut that showing, it is unnecessary for us to address the Secretary's argument in support of plaintiffs.

Finally, Church's focuses exclusively on the question of liability, and does not challenge the remedy; thus we need not address the judgment amount.

Because plaintiffs met their summary-judgment burden for their ERISA fiduciary-breach claim, and because Church's failed to rebut that showing, we **AFFIRM** the judgment of the district court.