NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0265n.06

No. 18-1828

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 23, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KAREN BRIGGS, individually and as personal representative of the Estate of Christopher A. Neumann, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; INTERPUBLIC GROUP OF COMPANIES, INC. WELFARE BENEFIT PLAN; INTERPUBLIC GROUP OF COMPANIES, INC., <br><br> Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |

BEFORE: SUHRHEINRICH, BUSH, and READLER, Circuit Judges.

SUHRHEINRICH, Circuit Judge. After Christopher A. Neumann died in a private plane crash, Neumann's mother and beneficiary, Plaintiff Karen Briggs, claimed benefits under Neumann's accidental death and dismemberment policy ("AD&D Policy"), issued by Defendant National Union Fire Insurance Company ("NUFIC"). Neumann, an employee of Defendant Interpublic Group of Companies, Inc. ("IPG"), purchased the optional AD&D benefits as part of Defendant IPG's ERISA Welfare Benefit Plan ("Plan") (collectively "IPG Defendants"). NUFIC denied Briggs's claim under an aerial navigation exclusion in the Policy for insureds who die in a private plane crash. She then sued NUFIC and the IPG Defendants under ERISA.[1] The district

---

[1] The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

court dismissed all of Briggs's claims and entered judgment in favor of all defendants. For the following reasons, we affirm the judgment of the district court.

## I. BACKGROUND

### A. Facts

IPG offers its employees various voluntary benefits under its Plan, as outlined in the Plan Document. The Plan Document incorporates by reference third-party insurance policies, including NUFIC's AD&D Policy.

The Plan and AD&D Policy make NUFIC the Claims Administrator of the AD&D Policy. The Plan also makes NUFIC the named fiduciary for the AD&D Policy. The AD&D Policy requires that notice of claims and proof of loss be furnished to NUFIC, and both documents state that any benefits will be paid by NUFIC.

IPG provided employees with an "overview" of "choices available" in a booklet entitled "Your Benefits Guide 2011." Choices include AD&D insurance. The Benefits Guide explains that if an employee chooses "coverage under the [AD&D Policy] and [he] or a family member suffers injury or dies as a result of an accident, the Plan will pay" 100% coverage for "Loss of . . . Life." However, on the bottom of the last page of the Benefits Guide, (and the last of several blank pages), in somewhat fine print, it states:

> This Benefits Guide provides a general description of the various benefit plans offered by The Interpublic Group of Companies, Inc. ("the Company") to its employees and employees of participating units in 2011. This Benefits Guide is provided to assist you in making elections during enrollment for the 2011 plan year. *The information in this Benefits Guide is subject to and qualified by the terms and conditions contained in the official plan documents, including summary plan descriptions, for the plans that provide the benefits listed in this Benefits Guide. This Benefits Guide is not an official plan document or summary plan description for the benefit plans.* Although the Company intends to continue the benefit plans indefinitely, the Company reserves the right to change, amend or terminate any of the benefit plans at any time. For more information about the benefit plans, please contact your local Benefits Administrator.

The Benefits Guide does not address enrollment information, premiums, the claims process, or coverage exclusions under the AD&D Policy

The Benefits Guide was the only document distributed to employees about the AD&D Plan.

Neumann was an employee of Weber Shandwick, a division of IPG. He enrolled in NUFIC's AD&D Policy on October 6, 2011. He selected $1,000,000 in coverage for himself and an additional $600,000 in coverage payable to his dependent, Todd Glenn Lloyd, in the event of an accidental death. His premiums were approximately $19.60/month ($235.20/year). Lloyd was automatically designated as Neumann's beneficiary under the Policy, and Neumann made his mother, Briggs, the contingent beneficiary.

On January 6, 2014, Neumann and Lloyd died in a private plane crash near Boyne City, Michigan. Lloyd was flying the plane; Neumann was the sole passenger. There is no dispute that Neumann was not a ticketed passenger. Shortly thereafter, Briggs submitted a claim for AD&D benefits to all three defendants through NUFIC's Claims Administrator, AIG Claims Services of Shawness, Kansas ("AIG").[2]

AIG denied Briggs's claim under the aerial navigation exclusion of the policy and notified Briggs of her right to appeal. The AD&D Policy excludes from coverage any loss caused by "flight in . . . any vehicle used for aerial navigation, other than as a fare-paying passenger on a scheduled or charter flight operated by a scheduled airline whether as a passenger, pilot, operator or crew member" ("aerial navigation exclusion"). Briggs's administrative appeal was also denied.

---

[2] AIG also assisted Briggs in submitting a claim under a voluntary life insurance policy. Briggs received $1.12 million dollars under that policy as the beneficiary of Neumann and Lloyd.

## B. Procedural History

Briggs sued under ERISA.  Count I sought benefits from NUFIC under the AD&D Policy pursuant to § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[3]  Count II sought benefits from the Plan pursuant to § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Count III requested reformation of the Plan pursuant to § 502(a)(3).  Count IV sought equitable relief against NUFIC for breach of fiduciary duty under § 502(a)(3).  Count V asked for the same relief against IPG.  Count VI requested civil penalties against IPG pursuant to § 502(c)(1)(B) for IPG's failure to produce a summary plan description when Briggs asked for it on July 23, 2014.  The Interpublic Defendants and NUFIC each moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).

On August 8, 2017, the district court dismissed Count II against IPG (but not the Plan), holding that IPG was not a proper defendant for Briggs's § 502(a)(1)(B) benefits claim.  The court also dismissed Briggs's § 502(a)(3) claims for equitable relief against IPG and the Plan (Counts III and V), and NUFIC (Count IV), because Briggs could not show that the IPG Defendants or NUFIC misrepresented the terms of the insurance plan.  The court rejected Briggs's argument that the Benefits Guide, the only document Neumann received, was a misrepresentation because it failed to disclose terms that defeat coverage.  The court rejected this argument because explicit language in the Benefits Guide stated that it was not an official plan or summary plan description.

This left Briggs's § 502(a)(1)(B) claim for benefits against the NUFIC and the Plan (Counts I and II).[4]  On July 6, 2018, the district court issued a final order and judgment on the parties' cross-motions for summary judgment on the administrative record, holding that the AD&D Policy expressly excluded benefits.  The court stated that NUFIC's and the Plan's "alleged failure to

---

[3] All references are to the First Amended Complaint, referred to simply as the "complaint."

[4] Briggs's does not appeal this ruling however.

disclose the full policy provisions d[id] not entitle Briggs to a substantive award for benefits." The court again rejected Briggs's argument that she was entitled to equitable relief under § 502(a)(3), explaining that under ERISA, the written terms of the plan documents, here the AD&D Policy, governed any entitlement to benefits. The court also rejected Briggs's argument that the Benefits Guide qualified as a summary plan description under ERISA. Finally, the court denied civil penalties under § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B).

On appeal Briggs argues that the district court erred in dismissing (1) Count III under § 502(a)(3) to reform the Plan to conform to the terms of the Benefits Guide; (2) Count IV under § 502(a)(3) against NUFIC for failing to deliver accurate insurance coverage information; and (3) Count V under § 502(a)(3) to surcharge IPG for providing an inaccurate Benefits Guide to Neumann.[5] Briggs asks this court to reverse the district court's August 8, 2017 order and July 6, 2018 order and judgment and hold that she is entitled to equitable relief under § 502(a)(3), 29 U.S.C. § 1132(a)(3), and to recover AD&D benefits pursuant to § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[6]

## II. ANALYSIS

Briggs concedes on appeal that "under a literal reading of the NUFIC policy, coverage for death occurring in private aircraft travel is excluded." In other words, she is not entitled to benefits under § 502(a)(1)(B) because the AD&D Policy unequivocally precludes coverage under the undisputed facts of this case; namely that Neumann died in a private plane crash. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant of beneficiary . . . to recover

---

[5] Although asserted as two counts, Counts III and V, Briggs alleged only a single breach of fiduciary duty claim based on an alleged misrepresentation with alternative remedies—reformation or other equitable relief.

[6] She does not appeal her claim for statutory penalties under § 502(c).

benefits due him *under the terms of his plan . . . .*") (emphasis added).[7] She also acknowledges that a claim under § 502(a)(3) may not be a repackaged claim for benefits under § 502(a)(1)(B). *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015) (en banc) ("Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury.") Instead, Briggs maintains on appeal that she is entitled to equitable relief under § 502(a)(3) for breach of fiduciary duty because she has alleged an injury separate and distinct from the denial of benefits. *See* 29 U.S.C. § 1132(a)(3) (allowing participants or beneficiaries "to obtain other appropriate equitable relief"). Specifically, she claims that IPG and the Plan breached their fiduciary duty by (1) tendering an inaccurate Benefits Guide; (2) failing to deliver a summary plan description; and (3) failing to ensure that NUFIC provided Neumann with a certificate of insurance She claims similar relief from NUFIC for its failure to provide Neumann with a copy of the AD&D Policy and certificate of insurance. She therefore contends that the district court erred by enforcing the aerial navigation exclusion because it is not listed in the Benefits Guide.

## A. IPG Defendants

*Providing a Misleading Benefits Guide.* The Supreme Court and this Court have recognized that § 502(a)(3) "authorizes district courts to remedy 'false or misleading' statements in summary plan descriptions with 'appropriate equitable relief.'" *Butler v. FCA US, LLC*, 706 F. App'x 256, 258 (6th Cir. 2017) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 438–42 (2011)). To state a breach of fiduciary claim based on a purported misrepresentation, a plaintiff must plead facts showing that (1) the defendant, while acting in a fiduciary capacity, (2) made a material *mis*representation, (3) that the plaintiff relied on. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d

---

[7]As the district court noted, this conclusion is inescapable regardless of the standard of review applied—de novo or arbitrary and capricious—so we need not address the parties' arguments on that front.

416, 433 (6th Cir. 2006). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision . . . ." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (quoting *Krohn v. Huron Mem'l Hosp.,* 173 F.3d 542, 547 (6th Cir. 199)).

*Misrepresentation.* Briggs avers that IPG and the Plan provided materially inaccurate information regarding AD&D coverage because the Benefits Guide states that if "you or a family member suffers an injury or dies as a result of an accident, the Plan will pay . . . benefits." She seeks equitable relief in the form of reformation of the Plan (Count III) and a surcharge against IPG (Count V).

"But we presume that participants read the entire summary, interpreting provisions in context." *Butler*, 706 F. App'x at 258. Context, as is usually the case, is key here. As the district court held, the Benefits Guide relied upon by Neumann "is *not* a summary plan description" or a controlling plan document," because it "explicitly" states that "*This Benefits Guide is not an official plan document or summary plan description* for the benefit plans.'" (emphasis added by district court). *See Candeub v. Blue Cross Blue Shield of Mich.*, 577 F. Supp. 2d 918, 931-32 (W.D. Mich. 2006) (stating that "[t]he massive weight of authority, then, is that insurance booklets do not qualify as SPDs, unless they contain all or substantially all of the required information under the statute and regulation"). Even so, summary plan documents themselves, "important as they are, provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)," *Amara*, 563 U.S. at 438, unless "the summary itself so provides." *Butler*, 706 F. App'x at 258. In light of the Benefits Guide's unambiguous language, no reasonable employee could interpret the Benefits Guide as a summary plan description, let alone a document containing all the material terms, conditions, and

exclusions for AD&D benefits. This conclusion is highlighted by another sentence in the Benefits Guide directing employees to contact their local Plan Administrator "for more information about benefit plans."

Absent a plausible allegation of a misrepresentation, let alone a material one, the district court properly dismissed all of Briggs's § 502(a)(3) claims against the IPG Defendants pursuant to Fed. R. Civ. P. 12(b)(6) and the familiar pleading requirements outlined in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Contrary to Briggs's assertion on appeal, the district court did not err in considering the Benefits Guide because it is referenced in her complaint. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88–90 (6th Cir. 1997) (a court may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims); *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

The cases Briggs cites—*Deschamps* and *Krohn*—do not help her because in each instance the plaintiff inquired directly about the availability of certain benefits, and the defendants gave inaccurate and incomplete information in response. *See Deschamps v. Bridgestone Americas Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 271–72, 278 (6th Cir. 2016); *Krohn v. Huron Mem'l Hosp.*; 173 F.3d 542, 545, 547–49 (6th Cir. 1999); *cf. Sprague v. General Motors Corp.* 133 F.3d 388, 405–06 (6th Cir. 1998) (finding no breach of fiduciary duty where employer did not offer misleading information about the possibility of a pension plan changing). In *Gregg v. Transportation Workers of America International*, we found a genuine issue of material fact as to whether the defendants materially misled the participants although each individual policyholder's certificate explained that insured's right to inspect the group master policy available to participants

"during normal business hours." We found that this did not constitute disclosure "in any meaningful sense" because the master policy was in faraway states. 343 F.3d 833, 844 (6th Cir. 2003). Briggs does not allege that Neumann faced similar hurdles or otherwise asked for additional information and did not receive it. And in *James v. Pirelli Armstrong Tire Corporation*, the employer, on its own initiative, provided materially misleading and inaccurate information about the future benefits of a plan. 305 F.3d 439, 455–56 (6th Cir. 2002).[8]

*Detrimental Reliance.* The complaint is equally deficient in the reasonable-reliance-allegation department. The complaint does not allege that Neumann read the Benefits Guide and concluded that AD&D benefits would be payable in the event of a private airplane crash; instead it says, without factual support, that IPG "induc[ed] Mr. Neumann to rely on the representations of the Benefits Guide . . . ." Such "[t]hreadbare recitals of the elements of a cause of action do not suffice." *Iqbal*, 556 U.S. at 678.[9]

*Van Loo v. Cajun Operating Company*, does not save her claim. *See Van Loo v. Cajun Operating Co.*, 703 F. App'x 388, 394 (6th Cir. 2017). There the decedent elected a level of life

---

[8] NUFIC argues that Briggs cannot rely on case law addressing equitable estoppel claims because she did not claim that her § 502(a)(3) claim was based on equitable estoppel. As NUFIC correctly points out, in *Deschamps*, the court addressed detrimental reliance in the context of an equitable estoppel claim under § 502(a)(3), *Deschamps*, 840 F.3d at 273–76, and *Sprague* addressed an estoppel claim without making any reference to a statutory provision, *Sprague*, 133 F.3d at 403–04. We have observed that equitable estoppel "has sometimes been considered a doctrine that can apply in § 1132(a)(1)(B) actions to estop the plan from being enforced as written, sometimes a doctrine that can be used in § 1132(a)(3) to gain similar relief, and sometimes as a free-floating common-law cause of action under ERISA." *Julia v. Bridgestone/Firestone, Inc.*, 101 F. App'x 27, 31 (6th Cir. 2004) We also observe that misrepresentation and justifiable reliance are elements shared by a § 502(a)(3) breach of fiduciary claim, *see Moore*, 458 F.3d at 433; a § 502(a)(3) equitable estoppel claim, *Deschamps*, 840 F.3d at 273–76; and a stand-alone common law claim, *see Sprague*, 133 F.3d at 403. Similar to the *Julia* court, "we need not wade too deeply into this morass" of case law, because like the *Julia* plaintiff, Briggs cannot show reasonable reliance, *see Julia*, 101 F. App'x at 31–32, or a misrepresentation. *See id.* (declining to decide whether the plaintiff properly sought to recover benefits under § 502(a)(1)(B) and estop the defendant from its misrepresentations or sought equitable estoppel under § 502(a)(3) because she could not show reasonable reliance on the misrepresentations). Thus, however classified, Briggs's claim that she is entitled to relief based on alleged misrepresentations in the Benefits Guide fails.

[9] Moreover, when the court revisited the reliance issue in its July 18, 2018 opinion (which had already been dismissed anyway) it noted that Briggs had not offered any evidence of what was on Neumann's mind when he purchased the AD&D Policy.

insurance benefits that required an evidence-of-insurability form as a precondition. The defendant employer, who self-administered the plan, accepted the decedent's insurance premiums for several years, but never required her to submit the requisite form. We held that the decedent reasonably relied on defendant's misrepresentation that she qualified for the benefit and that she therefore stated a claim for breach of fiduciary duty. *Id*. at 394–95. But here, as the district court observed, given the Benefits Guide's admonitions, Neumann could not reasonably infer that insurance benefits would be payable in the event of any and every accident simply because he paid premiums.

*Equitable Reformation.* Equitable reformation of the Plan is also not an option because the complaint fails to allege any facts suggesting that that IPG and the Plan misled him into thinking anything differently. *See Pearce v. Chrysler Grp.*, *LLC Pension Plan* (*Pearce II*), 893 F.3d 339, 347–49 (6th Cir. 2018) (reformation under § 502(a)(3) requires a mistaken belief by one party caused by fraud or inequitable conduct by the other party, with the latter element mirroring the definition of fraud in equitable estoppel). *See generally Iqbal*, 556 U.S. at 678. Further, there are no allegations of "fraud or inequity" by which IPG and the Plan gained an "undue and unconscientious advantage" over Briggs. *See Pearce*, 893 F.3d at 348. IPG is not responsible for paying benefits owed under the AD&D Policy, and the Policy is 100% funded through premium payroll deductions. Briggs does not dispute that IPG remitted Neumann's premiums to NUFIC. For the same reasons, surcharge (monetary relief for a loss resulting from a trustee's breach of duty, or to prevent the trustee's enrichment) is also not a proper remedy. *See generally Amara*, 563 U.S. at 442.

*Not Providing a Summary Plan Description.* Briggs asserts that benefits should be awarded because IPG and the Plan failed to provide Neumann with a summary plan description. ERISA requires a plan administrator to furnish summary plan descriptions to employees to all

participants and beneficiaries of an ERISA plan. § 104(b), 29 U.S.C. § 1024(b). But, as we have consistently held, such shortcomings are not a basis for a substantive remedy, *i.e.*, an award of benefits. *See Sears v. Union. Cent. Life Ins. Co.*, 222 F. App'x 474, 479 (6th Cir. 2007); *Del Rio v. Toledo Edison Co.*, 130 F. App'x 746, 751 (6th Cir. 2005) (holding that "ERISA does not provide a substantive remedy for the violation" of "ERISA-imposed disclosure requirements"); *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1009 (6th Cir. 1993) (per curiam) ("Nothing in § 1132 suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information." Instead, recourse for disclosure violations is limited to the statutory penalties found in ERISA's civil enforcement provision. *See* 29 U.S.C. § 1132(c); *Lewandowski*, 986 F.2d at 1009 (recognizing that ERISA consciously limits recovery for disclosure violations); *Lampkins v. Golden*, 104 F.3d 361, 1996 WL 729136, *3 (6th Cir. 1996) ("The purpose of the statutory penalty is not to compensate participants, but to induce administrators to expeditiously provide requested plan documents by punishing those who fail to comply.")

*Failing to "Police" NUFIC.* Briggs's related argument that IPG and the Plan breached a fiduciary duty by "failing to ensure that NUFIC delivered a certificate of insurance to Mr. Neumann," also falters because (1) it has been forfeited because raised for the first time on appeal, *see United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009); and (2) even if IPG and the Plan had a duty to monitor this activity (which the complaint does not allege), such a disclosure violation does not give rise to substantive relief. *See Del Rio*, 130 F. App'x at 751.

## B. NUFIC

Briggs maintains that NUFIC is still on the hook for damages pursuant to § 502(a)(3) because it never provided Neumann with a certificate of insurance. But NUFIC's alleged failure

to provide Neumann with a copy of the Policy or insurance certificate[10] is irrelevant to her denial of benefits claims. *See, e.g., Lewandowski*, 986 F.2d at 1009. Furthermore, as noted, Briggs's assertion that NUFIC "induc[ed] Mr. Neumann to rely on the representations of the Benefits Guide rather than seeking alternative coverage" consists of mere conclusory allegations, not facts to support a plausible claim. *See Iqbal*, 556 U.S. 678–80. There are no facts establishing that Neumann read the Benefits Guide, concluded that there were no exclusions in the AD&D Policy, and then decided not to purchase alternative coverage. Furthermore, Briggs does not identify any misrepresentations by NUFIC. There are no facts suggesting that NUFIC helped draft or disseminate the Benefits Guide—further attenuating Briggs's inducement claim against NUFIC. *See Iqbal*, 556 U.S. at 678. In fact, there are no allegations that NUFIC took any actions that could support a plausible breach of fiduciary claim.[11] Moreover, as discussed, no reasonable employee could have believed that the Benefits Guide was the official plan.

Briggs attempts to gain traction with the following argument: when the Benefits Guide and the AD&D Policy have been in conflict, the parties' "course of performance" is to conform to the Benefits Guide, not the Plan. She "proves" her point by noting that during the administrative claim and appeal process, when confronted with a conflict between the Benefits Guide, which expressly included coverage for domestic partners, and the AD&D Policy, which did not, AIG resolved the domestic partner discrepancy by retroactively adding a rider to the NUFIC Policy extending coverage to domestic partners. This argument does not change the course of our reasoning. First, NUFIC never denied the claims for either death based on the absence of a domestic partner

---

[10] ERISA does not require the delivery of a certificate of insurance.

[11] Briggs attempts to get around this pleading fatality by asserting that, during the claim and appeal process, "the AIG representative spoke with Ms. Briggs . . . and Ms. Briggs indicated that her son would not have paid for coverage with such an exclusion as he 'often was flying this way.'" Setting aside the fact that this claim was dismissed under Rule 12(b)(6) and reliance on the administrative record is thus improper, this does not prove that *Neumann* relied on the alleged nondisclosure of the exclusion when he decided not to seek alternative coverage.

rider. Second, NUFIC's decision to add a domestic partner coverage rider does not demonstrate that the decision to deny coverage based on an unambiguous policy exclusion is arbitrary and capricious, especially since there was no conflict between the Benefits Guide and the Policy. Third, this was a singular decision, and therefore not within the definition of "course of performance." *See* COURSE OF PERFORMANCE, Black's Law Dictionary (10th ed. 2014) ("A sequence of previous performance by either party after an agreement has been entered into, when a contract involves repeated occasions for performance . . . .").

### C. Impermissible Repackaging

Both the Interpublic Defendants and NUFIC continue to assert on appeal that Briggs's § 502(a)(3) fiduciary duty claim must be dismissed as improper "repackaging" of her § 502(a)(1)(B) benefits claim. *See Rochow*, 780 F.3d 364; *Wilkins v. Baptist Healthcare System Incorporated,* 150 F.3d 609, 615 (6th Cir. 1998). The district court noted that in this circuit "[t]here is an open question of how equitable estoppel claims interact with the repackaging defense," but decided that it need not address the issue because it concluded that Briggs had failed to state a claim under § 502(a)(3). Because we reach the same conclusion, it is also unnecessary for us to address this argument.

### III. CONCLUSION

As the district court held, Briggs is not entitled to benefits under § 502(a)(1)(B) or any form of equitable relief under § 502 (a)(3). We therefore **AFFIRM** the judgment of the district court.